IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| REBECCA O'NEILL, § | | |
| Petitioner, § | | |
| § | | |
| v. § | CIVIL ACTION NO: H-13-0333 | |
| § | | |
| AMERICOLD LOGISTICS, LLC, § | | |
| Defendant. § | | |

**SUMMARY JUDGMENT OPINION AND ORDER**

This employment dispute is before the court on defendant Americold Logistics, LLC's motion for summary judgment (Dkt. 22). Having considered the parties' submissions and the law, defendant's motion is denied in part and granted in part.

**Background and Undisputed Facts**

A predecessor of Americold Logistics, LLC hired Rebecca O'Neill, a Caucasian female, on December 21, 1990 as a warehouse supervisor at a facility in Houston. In 1993, she transferred to the La Porte facility where she worked as a warehouse supervisor until her termination by Americold on March 31, 2012. At the time of her termination, she was the only female warehouse supervisor, and one of very few female employees at the facility. She also had been employed at the facility longer than any other warehouse supervisor.

O'Neill filed this suit in February 2013 asserting claims for retaliation and discrimination on the basis of her age, gender, and race in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 (ADEA). O'Neill has voluntarily agreed to dismiss her ADEA and race discrimination claims,[1] leaving her

---

[1] Dkt. 25 at 2. O'Neill's ADEA and race discrimination claims are dismissed with prejudice.

gender retaliation and discrimination claims for consideration on Americold's motion for summary judgment.

**Summary Judgment Standards**

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

The standard for granting summary judgment in Title VII cases is by now too familiar to warrant extended recitation. *Reeves v. Sanderson Plumbing Prods., Inc.*, succinctly summarizes the appropriate inquiry:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

530 U.S. 133, 148-49 (2000). The court must draw all reasonable inferences in favor of the non-movant, and disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.* at 150-51. Trial courts should not treat discrimination differently than other ultimate questions of fact for purposes of Rule 50 or 56. *Id.* at 148.

**Analysis**

    1.    **Title VII Discrimination**

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

O'Neill was terminated as part of a company-wide reduction in force. Even so, a termination as a result of a reduction in force may be actionable if there is evidence from which a jury can reasonably find discriminatory intent. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

In September 2011, Jerry Harrelson, Operations Manager of the La Porte facility, completed a performance assessment known as the "9-Block Assessment" for all exempt-level employees at the facility.[2] He did not look at any personnel files or performance reviews when he filed out the assessment, but relied just on his overall impressions.[3] He ranked O'Neill lowest of the warehouse supervisors. He testified that he did so because she did not have certifications to operate equipment, she was not cross-trained in other areas of the warehouse, and her duties in USDA inspection could be covered by other warehouse supervisors.[4]

In March 2012, Mike Steward, Regional General Manager responsible for the La Porte, Dallas, and Houston facilities, selected employees from those facilities for a company

---

[2]    Harrelson dep. at 212.

[3]    *Id.* at 230-33.

[4]    *Id.* at 233-34.

3

reduction in force. He selected O'Neill for termination at the La Porte facility because Harrelson ranked her lowest on the 9-Block Assessment. Harrelson's assessment was his only reason -- he did not review any personnel files, interview any employees, or otherwise undertake any independent investigation.[5]

Under the "cat's paw" theory endorsed by the Supreme Court in *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011), "if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Id.* Thus, Americold is not insulated from liability even if Steward had no knowledge of Harrelson's animus and intent.[6]

There is some evidence from which a reasonable jury could infer that Harrelson ranked O'Neill lowest on the 9-Block Assessment out of animus, because she is a woman. O'Neill claims that Harrelson told her a couple times that women "didn't belong in the warehouse."[7] Harrelson disputes ever saying that,[8] but it is for a jury to decide whom to believe. If the jury believes O'Neill, the statement is evidence of Harrelson's discriminatory intent.[9]

---

[5]  Steward dep. at 32, 69-77, 83-84, 88.

[6]  *See* Harrelson dep. at 212; Hobbs dep. at 184.

[7]  O'Neill dep. at 61-63.

[8]  Harrelson dep. at 61-62.

[9]  O'Neill also testified that Larry Hobbs, the HR manager who informed her of her termination, said "would you rather we laid off one of the guys?" when she asked "why me?" But Hobbs was only a messenger, he neither made the termination decision nor did the assessment that led to it. Hobbs dep. at 160-61. So even if true this statement is not particularly material.

There is also some evidence from which a reasonable jury could infer that Harrelson intended his assessment to have an adverse employment effect on O'Neill. The 9-block assessment occurred approximately six months before the RIF and was the sole basis for O'Neill's termination. While Harrelson and Hobbs claim the assessment was intended to be used as a developmental tool, to assist supervisors in improving the performance of their employees,[10] the evidence suggests that the first time Americold used the results of the assessments was in firing O'Neill. In fact, O'Neill was not informed of the results of her assessment until after her employment was terminated.[11]

Further, though Harrelson claims to have been unaware of the imminent RIF at the time he prepared his assessment in September 2011,[12] a reasonable jury could find otherwise. After all, employee rankings commonly precede reductions in force and are routinely invoked to justify the selection of employees to terminate. *See, e.g.*, *Slovensky v. Fluor Corp.*, ___ Fed. Appx. ___, 2014 WL 3378318 at *1 (5th Cir. Jul. 11, 2014) (per curiam) (employer's "practice in conducting reductions in force was to use a ranking system"); *Bacon v. EDS*, 219 Fed. App'x 355, 356 (5th Cir. 2007) (supervisor instructed to rank employees because company planned a RIF); *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 256 (N.D. Tex. 2011) *aff'd sub nom. Powell v. Dallas Morning News, LP*, 486 Fed. App'x 469 (5th Cir. 2012) (employees ranked for downsizing); *Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431, 461 (S.D. Tex. 2010) (managers told to plan for downsizing of the department

---

[10]   Hobbs dep. at 184.

[11]   O'Neill dep. at 103-108.

[12]   Harrelson dep. at 218.

and to evaluate and rank their employees).

More generally, some evidence exists that equipment operation certifications and cross-training were not as important to the warehouse supervisor job as Harrelson made them out to be in the 9-Block Assessment. Cross-training and equipment operator certification are not mentioned in the warehouse supervisor job description.[13] O'Neill performed her job for 22 years without equipment operation certificates, and she received good performance evaluations.[14] O'Neill was never told she needed certifications to operate equipment.[15] While O'Neill's primary area of responsibility was USDA import inspections, she covered other areas when she supervised the entire facility on weekends.[16] Harrelson never documented or told O'Neill that he had concerns about her ability to oversee the entire facility,[17] nor did he tell her she needed additional training.[18]

The record reveals very little about the men who kept their warehouse supervisor jobs in March 2012,[19] but it is undisputed that O'Neill had been there longer than any of them.[20] Hector Villareal, one of the male supervisors O'Neill trained when he was first hired in the

---

[13]   Dkt. 25-7.

[14]   Steward dep. at 49; Harrelson dep. at 125-134.

[15]   O'Neill dep. at 196.

[16]   *Id*. at 142-43; O'Neill dep. at 38-39, 41, 44-49, 54.

[17]   Harrelson dep. at 138.

[18]   *Id.* at 134-41.

[19]   Defendants did not produce performance evaluations for 2009-2011.

[20]   O'Neill dep. at 27.

warehouse, took over supervision of the USDA area after O'Neill's termination.[21] The square footage of the USDA area is smaller than some others, but it accounts for about 30% of Americold's work and requires a capable supervisor.[22]

The court concludes that O'Neill has presented sufficient evidence for a reasonable jury to find in her favor on her sex discrimination claim. Americold's motion for summary judgment on this claim is denied.

### 2.     Retaliation

O'Neill alleges that she was terminated because she previously complained about problems with another manager, Joel Estrada, and because she complained to Harrelson and to an onsite HR representative named Sylvia that Harrelson treated her differently than the men, and that Harrelson commented that women should not be in the warehouse.[23]

The elements of a retaliation claim are (1) protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and adverse employment action. *Fabela v. Socorro Indep. School Dist.*, 329 F.3d 409, 414 (5th Cir. 2003). In the context of retaliation, an adverse employment action is one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct.

---

[21]   Harrelson dep. at 76-77.

[22]   *Id.* at 68, 140; Steward dep. at 28.

[23]   O'Neill dep. at 67.

2517, 2528 (2013); *Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).

O'Neill says that she complained to Harrelson that she felt he was treating her differently than other warehouse supervisors because she is a woman, and she has produced hand-written notes documenting one such complaint.[24] Americold disputes whether O'Neill engaged in protected activity by complaining about Harrelson. But the dispositive issue for purposes of summary judgment is whether there is sufficient evidence of a causal connection between the protected activity she alleges and her termination.

O'Neill's notes are dated September 2010, about year before Harrelson completed the 9-Block Assessment, and are not part of a larger chronology of events that creates an inference of retaliation.[25] *See Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997).[26] In addition, there is no evidence that Harrelson or anyone else ever read the notes; he did not put them in her personnel file.[27] There is no evidence that Harrelson knew about O'Neill's complaint to Sylvia at the time he completed the 9-Block Assessment, and in fact it is not established that O'Neill's conversation with Sylvia took place before he did so.[28] In short, there is insufficient evidence of a causal connection between O'Neill's alleged protected activity and her termination to support a claim for retaliation. Therefore,

---

[24]    Dkt. 25-6 at 3.

[25]    Dkt. 25-6 at 3.

[26]    It is worth noting that *Brady*, recognizing that causation may be found in the "chronology of events," is a § 1983 First Amendment retaliation case in which the plaintiff's ultimate burden is arguably lower than the "but for" causation required under Title VII retaliation law. *Nasser*, 133 S. Ct. at 2528.

[27]    The notes were produced by O'Neill, not Americold.

[28]    *See* O'Neill dep. at 68.

Americold's motion for summary judgment on O'Neill's retaliation claim is granted.

**Conclusion and Order**

For the reasons discussed above, defendant's motion for summary judgment (Dkt. 22) is denied in part and granted in part. This case remains set for trial on August 11, 2014.

Signed at Houston, Texas on July 30, 2014.

Stephen Wm Smith
United States Magistrate Judge